

IN THE

# Court of Appeals of Indiana

Travis James Luke,

*Appellant-Respondent*

v.

Cheryl L. Luke,

*Appellee-Petitioner*



FILED

Nov 21 2025, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

November 21, 2025

Court of Appeals Case No.
24A-DN-2850

Appeal from the Kosciusko Superior Court

The Honorable Christopher D. Kehler, Judge

Trial Court Cause No.
43D04-2210-DN-267

**Opinion by Judge Vaidik**
Judges Tavitas and Felix concur.

**Vaidik, Judge.**

# Case Summary

[1] In *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000), this Court held that when divorcing parties include a provision in a property-settlement agreement that a retirement or investment plan will be "divided equally" as of a certain date, that language means that, absent express language to the contrary, the parties will also equally share in any gains or losses in the account's value after that date. In this case, Travis James Luke ("Husband") and Cheryl L. Luke ("Wife") included a provision in their property-settlement agreement that Wife would be awarded "one-half" of Husband's 401(k) as of the date of the filing of the divorce petition. The trial court later issued a Qualified Domestic Relations Order (QDRO) for Husband's 401(k), which provided that Wife would share in any gains or losses on her one-half share from the date of filing to the date the plan administrator divides the account. Husband challenged this language, and the trial court reaffirmed the QDRO.

[2] We reiterate *Niccum*'s holding that language that the parties will equally share in a retirement or investment plan as of a certain date means that the parties will also equally share in any gains or losses in the account's value after that date. If parties don't want to include any gains or losses, they must say so or use a fixed dollar amount (not a percentage or portion).

## Facts and Procedural History

[3] After nearly 27 years of marriage, Wife filed for divorce from Husband on October 4, 2022. After several continuances and failed mediations, a final hearing was set for July 2, 2024. In anticipation of the final hearing, the trial court ordered the parties to file a joint list of assets and debts, including proposed valuations and who should have possession of or responsibility for them. *See* Appellant's App. Vol. 2 pp. 32-33. On June 21, Husband submitted a Notice of Filing of Pretrial Submission with a Marital Property Balance Sheet attached. *See id.* at 46-51.[1] The Marital Property Balance Sheet was signed by both parties and their attorneys. As relevant here, each party listed Husband's 401(k) as an asset and valued it at $682,698. *See id.* at 47. $682,698 is the value of the 401(k) as of October 4, 2022, the date of filing.[2] Husband claimed that he should get possession of his 401(k), while Wife claimed that it should be divided. *See id.* at 47, 49.

---

[1] The trial court found that this submission was "not officially made part of the record." Appellant's App. Vol. 2 p. 23. But it appears on both the Chronological Case Summary (CCS) and the Odyssey case-management system.

[2] The Marital Property Balance Sheet doesn't list a valuation date. However, it is clear from later filings related to a stay that the parties agree $682,698 is the value of Husband's 401(k) on October 4, 2022, the date of filing. *See* Order Granting Partial Stay, Cause No. 43D04-2210-DN-267 (Jan. 7, 2025); Respondent's Verified Motion for Partial Stay, Cause No. 43D04-2210-DN-267 (Nov. 25, 2024); Petitioner's Verified Response to Respondent's Motion for Partial Stay, Cause No. 43D04-2210-DN-267 (Jan. 2, 2025). The parties don't address whether Husband has made additional contributions since October 4, 2022. If he has done so, Wife wouldn't be entitled to those contributions (or any gains attributable to them). *See Niccum*, 734 N.E.2d at 640.

[4]     On July 1, the day before the final hearing, the parties filed a Waiver of Final Hearing and Marital Settlement Agreement. The Marital Settlement Agreement divided the parties' assets, including real estate, businesses, cars, a boat, gold, and banking/retirement accounts, but it didn't list any values for them (except for a "2017 Yukon," *see id.* at 56). Paragraph 5(d) addressed Husband's 401(k):

> **[Wife] shall be awarded one-half (1/2) of [Husband's] 401(k)** last known to be through Trade PMR, pursuant to a Qualified Domestic Relations Order **which division shall be as of [the] date of the filing of [the] dissolution of marriage action, on October 4, 2022.** Counsel for [Wife] shall draft and file said Qualified Domestic Relations Order within sixty (60) days of the date of this Settlement Agreement.

*Id.* at 56 (emphases added). The agreement also required Husband to make a $1 million equalization payment to Wife. *See id.* at 58.[3] The next day, the trial court issued a Decree of Dissolution, which incorporated the Marital Settlement Agreement.

[5]     A month later, Wife asked the trial court to issue a QDRO for Husband's 401(k). Wife's proposed QDRO, which she had sent to Husband's attorney for review, provided that she would share in any gains or losses on her one-half share of Husband's 401(k) from October 4, 2022, until the date the plan administrator divides the account. Husband's attorney objected to this

---

[3] As of July 1, 2025, Husband still owed Wife $235,623.89. *See* Entry and Order on Proceedings Supplemental, Cause No. 43D04-2210-DN-267 (July 8, 2025).

language, which Wife noted in her motion. *See id.* at 65. Citing *Niccum*, Wife asked the court to issue her proposed QDRO.[4]

[6] The trial court issued the QDRO, which provides, in relevant part:

> This Order assigns to [Wife] fifty percent (50%) of the vested balance of [Husband's] account as of October 4, 2022. . . . As soon as administratively feasible after this Order is approved as a Qualified Domestic Relations Order by the Plan Administrator, the funds assigned herein shall be placed into a segregated account for [Wife's] benefit. **Said assignment of funds shall share in all earnings, gains, losses and expenses, from the specified date of assignment to the valuation date immediately preceding the creation of a segregated account for the benefit of [Wife].**

*Id.* at 75 (emphasis added). The next day, Husband filed a Trial Rule 60(B)(8) motion for relief from judgment, asking for a new QDRO that "exclud[es] growth and losses" to be issued or the Marital Settlement Agreement to be set aside. *Id.* at 79. Husband claimed that this case is different than *Niccum* because the parties agreed in the Marital Property Balance Sheet that his 401(k) had the specific value of $682,698. *Id.* at 78-79.

[7] The trial court held a hearing on this and other issues. It then issued an order in which it "reaffirm[ed]" the QDRO as being "consistent with the terms of the

---

[4] There is no evidence in the record about whether Husband's 401(k) has gained or lost value since October 4, 2022. We assume it has increased in value. Had it decreased in value, presumably Husband wouldn't be challenging the QDRO.

settlement agreement" and directed Mother's attorney to submit the signed QDRO to the plan administrator. *Id.* at 25.

[8] Husband now appeals. The trial court's ruling has been stayed pending appeal. *See* supra note 2.

## Discussion and Decision

[9] Husband contends that the trial court erred in denying his Trial Rule 60(B)(8) motion for relief from judgment. He argues that the Marital Settlement Agreement is "unclear" as to whether Wife is entitled to any gains or losses and asks us to look outside the four corners of that document to the Marital Property Balance Sheet—which was submitted 10 days before the Marital Settlement Agreement was filed and which valued the 401(k) at $682,698—to "clear[] up that ambiguity." Appellant's Br. p. 15.

[10] Property-settlement agreements are governed by the same rules of construction as other contracts. *Wohlt v. Wohlt*, 245 N.E.3d 611, 616 (Ind. 2024). The task is to determine and implement the parties' intent when they entered the contract. *Id.* "And to do that, courts start with the language of the parties' agreement." *Id.* If the contract's terms are unambiguous, then they are conclusive of the parties' intent, and courts give the contract its plain meaning. *Id.* "Thus, when reviewing an unambiguous written contract, courts look only to that document, staying within its four corners." *Id.* The interpretation of a property-settlement agreement is generally a question of law. *Id.*

"On the other hand, if a contract's terms are ambiguous, inconsistent, or uncertain, its interpretation is no longer a question of law but one of fact." *Id.* "In that case, the trier-of-fact must determine the facts required to construe the contract." *Id.* "And to do that, the factfinder must look outside the contract's four corners to parol (or extrinsic) evidence." *Id.* A contract is not ambiguous simply because the parties disagree about the proper interpretation of its terms. *Id.* "Instead, for an ambiguity to exist, the contract must be subject to more than one reasonable interpretation." *Id.*

This case centers on *Niccum*. There, the parties' property-settlement agreement, similar to the one here, provided that "[the husband's] benefit plan and savings and investment program [would] be put in a domestic relations order **to be divided equally between the parties as of the value on May 14, 1997**," which was the date the dissolution petition was filed. *Niccum*, 734 N.E.2d at 639 (emphasis added). The trial court later issued a QDRO providing that the wife would share in any gains or losses on her one-half share from the date of filing to the date of dissolution. The husband appealed, arguing that the trial court erred in finding that the wife was entitled to any growth on her share during this period.

On appeal, we found that the property-settlement agreement's language "divided equally" led "but to one conclusion, that [the husband] and [the wife] would both have equal shares, rights and entitlements to the funds in question, including growth and losses attributable to those shares." *Id.* at 640. Accordingly, we held that "absent express language stating otherwise, the

settlement agreement of the parties implicitly contemplated both parties sharing all of the rewards and risks associated with" the account. *Id.* We therefore affirmed the trial court's QDRO awarding the wife any gains or losses on her one-half share from the date of filing to the date of dissolution. *Id.*; *see also Ryan v. Ryan*, 972 N.E.2d 359, 369 (Ind. 2012) (noting that *Niccum*'s "rewards-and-risks principle" "has only been deployed with respect to investment and retirement plans").

[14] Similar to the language in *Niccum*, here the relevant language of the Marital Settlement Agreement provides:

> **[Wife] shall be awarded one-half (1/2) of [Husband's] 401(k)** last known to be through Trade PMR, pursuant to a Qualified Domestic Relations Order **which division shall be as of [the] date of the filing of [the] dissolution of marriage action, on October 4, 2022.**

Appellant's App. Vol. 2 p. 56 (emphases added). As in *Niccum*, the parties' use of the phrase "awarded one-half" means the parties have equal shares, rights, and entitlements to any growth or losses on their shares after October 4, 2022. Because we found similar language to be unambiguous in *Niccum*—which Husband doesn't argue was wrongly decided—we conclude that the language here is unambiguous as well. And because the language is unambiguous, we look only to the Marital Settlement Agreement, staying inside its four corners. *See Wohlt*, 245 N.E.3d at 616.

This holding is consistent with what this Court has said in the years after *Niccum*. For example, in *Shorter v. Shorter*, we highlighted that *Niccum* "put Indiana citizens on notice that provisions of that sort would be interpreted in this manner." 851 N.E.2d 378, 386 (Ind. Ct. App. 2006). We explained that to avoid the result from *Niccum*, divorcing parties can "easily" draft settlement-agreement provisions that "unambiguously express[] an intention to award" a "sum certain" of a retirement or investment plan as opposed to a percentage or portion. *Id.* And in *Bernel v. Bernel*, we found that a settlement agreement that provided the wife would receive "a sum certain"—$950,000—"in marketable securities from the JP Morgan Private Bank account, account ending 9006" meant that, "[u]nlike in *Niccum*," the parties would **not** share in any gains or losses. 930 N.E.2d 673, 682 (Ind. Ct. App. 2010), *trans. denied*.

Still, Husband says we should consider the Marital Property Balance Sheet—which was submitted to the trial court 10 days before the parties filed the Marital Settlement Agreement and which valued the 401(k) at the specific amount of $682,698—because the Marital Property Balance Sheet "would have been relied on in making the division of assets and determining the amount of the equalizing payment" in the Marital Settlement Agreement. Appellant's Reply Br. p. 6. In support, Husband relies on the contemporaneous-document doctrine, which lets courts, "on a case-by-case basis," "construe together contracts that relate to the same transaction or subject matter, if nothing indicates a contrary intention." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d

745, 753 (Ind. 2018). "Despite the doctrine's title, the agreements may have been executed at different times." *Id.*

[17] Wife claims that this doctrine doesn't apply:

> Because the Settlement Agreement's language is clear and unambiguous, the trial court had no basis to consult extrinsic evidence in construing its terms. The Settlement Agreement makes no mention of a separate Balance Sheet or any post-separation valuation schedule, and thus Husband cannot now inject that document into the analysis under the guise of the contemporaneous writings doctrine.

Appellee's Br. p. 26. We agree with Wife. Husband also argues that the following provision in the Marital Settlement Agreement sufficiently references the Marital Property Balance Sheet:

### WAIVER OF DISCOVERY

> 27. Each party further acknowledges that they have indicated to counsel that further formal discovery in this case was not necessary and that each party has sufficient knowledge and understanding of the marital assets and debts **to rely upon the disclosures which have taken place between the parties and which disclosures have been used as a basis for settling the issues herein**.

Appellant's App. Vol. 2 p. 61 (emphasis added). We are not persuaded. A loose reference to "disclosures" in the Waiver of Discovery section is not specific

enough for us to look outside the four corners of the unambiguous Marital Settlement Agreement.[5]

[18]     To avoid unnecessary and costly litigation expenses in divorce cases, we reiterate that a provision in a property-settlement agreement that states the parties will equally divide a retirement or investment plan as of a certain date means that the parties will also equally share in any gains or losses in the

---

[5] In his appellant's brief, Husband directs us to a case from Tennessee, *Heisig v. Heisig*, 2022 WL 17261525 (Tenn. Ct. App. Nov. 29, 2022), but we find that it is consistent with our decisions in *Shorter* and *Bernel*. In *Heisig*, the parties' marital dissolution agreement (MDA) provided that the wife would receive $130,000 from the husband's 401(k) and that the husband would receive the remaining balance. The Tennessee Court of Appeals held:

> Upon our review, the Decree and MDA in this case are unambiguous. The[y] awarded a specific dollar figure to Wife from the 401(k): $130,000. The court intended to award a fixed sum from the account. The specific language used—a grant of a specific sum—unambiguously means subsequent market gains or losses have no relevance to Wife's award. Awarding a fixed sum to Wife meant that, to Wife's benefit, she avoided the risk of the market dropping between the date of the Decree and the date of distribution.

2022 WL 17261525, at *3. Indeed, *Heisig* cites our decision in *Bernel* as support. *See id.*

In his reply brief, Husband cites other out-of-state cases, but they are also consistent with *Shorter* and *Bernel*. For example, in *Romer v. Romer*, the Alabama Court of Civil Appeals held:

> [B]y setting forth [in the settlement agreement] a sum certain that was to be paid to the wife [$600,000], the parties implicitly determined that the husband alone would bear the risk of any decrease in the value of his account or benefit from any increase in the value of his account. The parties were free to have allocated the risk of gains and losses otherwise, by, for example, expressing the distribution to the wife in terms of a percentage of the value of the retirement account at the time of distribution or by explicitly stating that the parties would bear their proportionate share of gains and losses accruing to the account between the date of the entry of the divorce judgment and the date of the distribution to the wife.

44 So. 3d 514, 521 (Ala. Civ. App. 2009). Because the Marital Settlement Agreement in this case does not give a fixed-sum award to Wife, these cases don't apply.

account's value after that date. If parties don't want to include any gains or losses, they must say so or use a fixed dollar amount (not a percentage or portion). This wasn't done here, so under *Niccum*, Wife will share in any gains or losses on her one-half share of Husband's 401(k) from October 4, 2022, until the date the plan administrator divides the account.

[19] We therefore affirm the trial court's denial of Husband's Trial Rule 60(B)(8) motion for relief from judgment.

[20] Affirmed.

Tavitas, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

David W. Stone IV
STONE Law Office & Legal Research
Anderson, Indiana

Joanne M. Kolbe
Law Offices of Joanne M. Kolbe
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Margaret M. Christensen
Sarah Katherine Jackson
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana